## PEOPLE v McMILLAN

CRIMINAL LAW—WITNESSES—IMPEACHMENT—PRIOR ARRESTS.
Allowance over objection of a prosecutor's questioning of a defense witness regarding his prior arrests was reversible error and any claim of inadvertence was without merit where the prosecutor's entire cross-examination of the witness consisted of improper inquiry regarding the witness's arrest record.

, Appeal from St. Clair, Halford I. Streeter, J. Submitted Division 2 June 20, 1973, at Lansing. (Docket No. 14304.) Decided August 28, 1973.

Jimmy L. McMillan was convicted of second-degree murder. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Walter W. Turton,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

*Richard S. McMillin,* Assistant State Appellate Defender, for defendant.

Before: T. M. BURNS, P. J., and McGREGOR and VAN VALKENBURG,* JJ.

McGREGOR, J. Defendant was charged, in an information filed on January 4, 1972, with first-degree murder, MCLA 750.316; MSA 28.548, in the

REFERENCE FOR POINTS IN HEADNOTE
58 Am Jur, Witnesses § 674 *et seq.*

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

beating death of his seven-year-old adopted son. The child was beaten on November 5, 1971, and died the following day of an acute subdural hematoma. The people's case was based wholly on circumstantial evidence, there being no eyewitnesses to the alleged crime. The defense filed a notice of alibi defense on February 1, 1972, pursuant to MCLA 768.20; MSA 28.1043. In that notice, defendant averred that, on November 5, 1971, he was away from his residence between the hours of 5 p.m. and 11:15 or 11:30 p.m., and that, upon arriving home, he found his son in an unconscious condition, unsuccessfully attempted to revive him, and thereafter obtained medical aid for the youngster. At the conclusion of proofs at trial, the court decided not to submit the issue of first-degree murder to the jury for lack of sufficient evidence of premeditation. On March 5, 1972, the jury found defendant guilty of second-degree murder, MCLA 750.317; MSA 28.549, and a judgment of conviction was accordingly entered. On April 19, 1972, appellate counsel was appointed to represent defendant in post-conviction proceedings. This appeal followed.

Although defendant has raised a number of issues in this Court, we think it necessary to deal only with one, *i.e.,* whether the trial court committed reversible error by allowing the prosecutor to impeach the credibility of a defense witness through the use of testimony concerning prior arrests which did not result in convictions.

One of the witnesses called by the defense testified, on direct examination, that he had been with the defendant at approximately 7:30 p.m. on the night the victim was beaten. The prosecution's cross-examination of that witness, in its entirety, was as follows:

"*Q. [by prosecution]:* Have you ever been arrested?
"*A.* Oh, yes.
"*Q.* What for?
"*[Defense counsel]:* Are these questions proper, your Honor?
"*[Prosecution]:* As to a witness, I think so.
"*A.* I was picked up—
"*[Defense counsel]:* Are you ruling on that objection, your Honor?
"*The Court:* I will allow him to answer.
"*A.* I was picked up, on a C. C. W.
"*Q.* And what else?
"*A.* And a breaking and entering.
"*Q.* What about rape?
"*A.* I wasn't picked up on that until just now.
"*Q.* Not until just now?
"*A.* Yes.
"*[Prosecution]:* That's all."

In *People v Brocato,* 17 Mich App 277, 302–303; 169 NW2d 483, 495–496 (1969), this Court stated:

"We now hold that a defendant testifying at his own trial may not be asked if he has been arrested or charged with crime, where the arrest or charge has not resulted in a conviction and where the only purpose of the questions is to impeach the defendant's credibility as a witness. Where credibility is the only issue, the probative value of arrests and charges, unsubstantiated by a conviction, is slight at best. When weighed against the great danger that the jury, despite careful instructions, might misapply such evidence, the scales of justice tip in favor of exclusion. *United States v Beno* (CA 2, 1963), 324 F2d 582."

Subsequently, in *People v James,* 36 Mich App 550, 559–560; 194 NW2d 57, 62 (1971), we extended the *Brocato* holding to the impeachment of a defense witness, noting:

"The reasoning of our Court in *Brocato* applies with

equal force in the case of a witness who is not a defendant; a distinction in this regard between the defendant and one of his witnesses cannot reasonably be drawn. Since the trier of fact is more likely to credit the testimony of disinterested third persons than the testimony of a keenly interested defendant, the defendant in many cases will be more dependent on the evidence offered by others than on his own testimony."

See also *Cachola v The Kroger Co,* 32 Mich App 557; 189 NW2d 112 (1971), *leave to appeal denied,* 385 Mich 775, and compare *People v Sesson,* 45 Mich App 288; 206 NW2d 495 (1973).

There can be no doubt that the prosecutor's cross-examination of the defense witness in this case was improper under *James, supra.* In light of the fact that the *entire* cross-examination consisted of improper inquiry regarding the witness's arrest record, any claim of inadvertence is without merit. Further, the error was properly preserved by a specific and timely objection and we are unable to conclude, beyond a reasonable doubt, that the error did not contribute to the jury's verdict. The trial court's allowance of the improper cross-examination was reversible error.

Our disposition of the above issue renders unnecessary consideration of defendant's remaining contentions which may not arise again during retrial.

Reversed and remanded for a new trial.

All concurred.