## PEOPLE v. RAMOS

1. CRIMINAL LAW—CONSTITUTIONAL LAW—DUE PROCESS—SEARCH AND SEIZURE—WEAPONS—DISARMING OF DEFENDANT.

  The police are not obligated to advise a defendant of his constitutional rights before making an effort to disarm him to prevent him from injuring police officers or someone else present.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—WEAPONS.

  The trial judge properly refused to suppress defendant's reply to a police officer to the effect that he had a gun in his belt, which was made before defendant was warned of his constitutional rights (Const 1963, art 1, § 11).

3. EVIDENCE—MOTIONS TO SUPPRESS—TESTIMONY IN SUPPORT—WEAPONS.

  Refusal of trial judge to hear testimony in support of defendant's motion to suppress evidence in trial for carrying a concealed weapon was not error, where the trial judge concluded that a complaint made to the police was sufficient for the police to make further investigation under the facts in the case and it did not appear that any testimony might have been the basis for a favorable ruling on defendant's motion (CL 1948, § 750.227).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 555–557.
[3] 29 Am Jur 2d, Evidence §§ 408, 425.
[4] 5 Am Jur 2d, Appeal and Error § 737.
　29 Am Jur 2d, Evidence §§ 493, 497, 503.

4. EVIDENCE—APPEAL AND ERROR—HEARSAY—CRIMINAL LAW—CON-
   CEALED WEAPON.

   Testimony that a radio report from the Michigan state police
   stated that no permit had been issued to defendant to carry
   a concealed weapon was hearsay and therefore not admissible,
   but admission of the testimony was not prejudicial where
   keeper of the county clerk's records in the county of defend-
   ant's residence testified that the records did not show that de-
   fendant had a license in that county, because the people do
   not have the burden of proving that the defendant did not
   have a license to carry a concealed weapon in any county
   of the state, but only that he did not have a license in the
   county of his residence (CL 1948, §§ 750.227, 769.26).

Appeal from Kent, John T. Letts, J. Submitted
Division 3 January 8, 1969, at Grand Rapids.
(Docket No. 4,080.) Decided May 29, 1969.

John Vasquez Ramos was convicted of carrying a
concealed weapon without a license. Defendant
appeals. Affirmed.

*James S. Miner,* for defendant.

BEFORE: LEVIN, P. J., and HOLBROOK and DAN-
HOF, JJ.

HOLBROOK, J. The defendant herein appeals his
conviction before the court without a jury of the
crime of carrying a concealed weapon in violation
of CL 1948, § 750.227 (Stat Ann 1962 Rev § 28.424).[1]

_____

[1] "Any person who shall carry a dagger, dirk, stiletto or other
dangerous weapon except hunting knives adapted and carried as
such, concealed on or about his person, or whether concealed or
otherwise in any vehicle operated or occupied by him, except in his
dwelling house or place of business or on other land possessed by
him; and any person who shall carry a pistol concealed on or about
his person, or, whether concealed or otherwise, in any vehicle oper-
ated or occupied by him, except in his dwelling house or place of
business or on other land possessed by him, without a license to so
carry said pistol as provided by law, shall be guilty of a felony,
punishable by imprisonment in the state prison for not more than
5 years, or by fine of not more than 2,500 dollars."

He raises on appeal four questions which will be stated and dealt with herein.

Pertinent facts appear to be as follows: Sometime in the early evening of February 4, 1967, a complaint was made by the defendant's wife to the police which occasioned a visit by a policeman to the residence situated at 1064 Caulfield avenue, S.W., in the city of Grand Rapids. She reported to the policeman that her husband had threatened her, that he had a revolver and had left for the 503 Bar situated at 503 S. Division in the city of Grand Rapids. The policeman dispatched this information over the radio. Other officers proceeded to the 503 Bar to investigate the complaint and one of the officers who knew the defendant testified in part:

"*Q.* Did you have occasion at that time then to go up to Mr. Ramos?

"*A.* Yes, I did. I walked up to Mr. Ramos. I said, 'Where is the gun, John?' and he stated, 'I don't have any gun.' I said, 'Come on now, where is it?' He said, 'It is in my belt,' and he pointed down toward the belt.

"*Q.* The person that you had the conversation with that you just testified about, is he present in the court room this morning?

"*A.* Yes, he is.

"*Q.* Would you point to him, please?

"*A.* The gentleman sitting to Mr. Miner's right.

"*Mr. Brander:* May the record show the witness has identified the defendant in this case, your Honor?

"*The Court:* So ordered.

"*Q.* After Mr. Ramos directed your attention to his belt area, what did you do?

"*A.* I reached in under his coat and grabbed the .38 revolver from his belt."

Defendant thereupon was placed under arrest and taken to police headquarters.

*1. Should the Smith and Wesson .38 revolver have been suppressed as evidence because it was obtained as the result of an unreasonable search and seizure?*

It is the defendant's claim that before asking the question "Where is the gun, John?" the police should have warned him of his constitutional rights under the decision of *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974). We do not think the police had any such obligation. The police had reasonable cause to believe that the defendant was armed and dangerous. This belief was based on information received from the defendant's wife. They had a right to rely on this information for it appeared to them to be reliable information. The police were not obligated to advise the defendant of his constitutional rights before making an effort to disarm him to prevent him from injuring the police officers or someone else present. Police officers are not required to take unnecessary risks in the performance of their duties.[2]

*2. Should the defendant's reply to officer Jaeger that the gun was in his belt have been suppressed because of the Fifth and Sixth Amendments to the United States Constitution as applied to the State of Michigan under the Fourteenth Amendment?*

This Court rules that the reasoning that we applied to the first issue raised by defendant is also applicable to this issue. The police officers were making a proper investigation as to the complaint that they had received as to "specific and articulable facts."[3] The inquiry was a proper one and the answer of the defendant was properly admissible. We rule that the trial judge properly refused to suppress either the defendant's statement to the

[2] *Terry* v. *Ohio* (1968), 392 US 1 (88 S Ct 1868, 20 L Ed 2d 889).
[3] *Terry* v. *Ohio, supra.*

police concerning the location of the gun or the gun itself.[4]  See also, Const 1963, art 1, § 11.

*3. Did the trial judge improperly refuse to hear testimony in support of defendant's motion to suppress?*

It did not appear to the trial judge that any testimony that might have been the basis for a favorable ruling on the defendant's suppression motion would have been forthcoming had further testimony been allowed.  We agree with the trial judge that the complaint made to the police was sufficient for the police to make further investigation under the facts in this case.  The police had a duty to investigate the facts of the complaint under the circumstances and they are commended for having done so.

*4. Was the testimony of Sidney W. Nastaj concerning a radio report from the Michigan State police post in East Lansing, Michigan, as to the fact that no permit had been issued to defendant to carry a concealed weapon, hearsay, and if so, was it prejudicial?*

The proffered testimony could not be received as substantive evidence to establish the fact that the defendant did not have such a license in the State of Michigan.  The testimony could only be offered to show that an inquiry was made but the results of the inquiry, *i.e.,* the report was inadmissible.  It was error to so admit it but not prejudicial because the people did not have the burden of proving that the defendant did not have a license to carry a concealed weapon in any county of the State, but only that he did not have a license in the county of his residence. CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096). See also, *People* v. *Braswell* (1968), 12 Mich App 685.

Mr. William H. Fitzsimmons, a keeper of the county clerk's records testified as follows:

---

[4] *Terry* v. *Ohio, supra.*

"*Q.* Do you maintain files on those persons who are entitled to carry concealed weapons?

"*A.* Yes.

"*Q.* Did you have occasion to check those files recently?

"*A.* Yes.

"*Q.* Were you able to determine whether the defendant in this case, Mr. John Ramos, had a license to carry a concealed weapon?

"*A.* We haven't any record of him having obtained a concealed weapon license through our office.

"*Q.* Does he have a license to carry a concealed weapon for purposes of hunting and target practice?

"*A.* Nothing as far as our records show.

"*Q.* There is nothing on your records to indicate he had a concealed weapon permit?

"*A.* That's right.

"*Mr. Brander:* I have no further questions.

"Cross-examination

"*By Mr. Miner:*

"*Q.* You are only testifying as to what your records show, is that correct?

"*A.* Yes."

M.CLA § 28.426 (Stat Ann 1969 Cum Supp § 28.93) provides in part as follows:

"The prosecuting attorney, the sheriff and the commissioner of the Michigan state police, or their respective authorized deputies, shall constitute boards exclusively authorized to issue licenses to applicants residing within their respective counties, to carry pistols concealed on the person and to carry pistols, whether concealed or otherwise, in any vehicle operated or occupied by said applicants."

There was evidence in the case showing that Mrs. Ramos who made the complaint to the police was residing in the city of Grand Rapids at 1064 Caulfield avenue, S.W. From this and other evidence it could be inferred that Mr. and Mrs. Ramos were

residents of the city of Grand Rapids, residing at 1064 Caulfield avenue, S.W., of Kent county.

After a careful review of the record in this case we are constrained to rule that there was no prejudicial error.

Affirmed.

All concurred.